UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

JORDAN ZACHARY,                          CIVIL ACTION NO.: 3:26-cv-00557
*Plaintiff*

v.                                       JUDGE:

JONATHAN LEFEAUX, Individually,
and the TOWN OF                          MAGISTRATE JUDGE:
BRUSLY,
*Defendants*

## COMPLAINT

NOW COMES Plaintiff, former Sergeant Jordan Zachary (hereinafter "Sergeant Zachary" or "Plaintiff"), who files this Complaint against Chief Jonathan Lefeaux ("Chief Lefeaux""), in his individual capacity and the Town of Brusly ( "Town of Brusly") (collectively, "Defendants"), asserting rights under the First and Fourteenth Amendments to the United States Constitution, La. Rev. Stat. 40:2531, referred to as the Louisiana Police Officers' Bill of Rights, and La. Rev. Stat. 40:2537 referred to as the Louisiana Public Whistleblower Statute, and avers as follows:

## PARTIES

1.

Plaintiff is a citizen and resident of Ascension Parish, State of Louisiana.

2.

Defendant Chief Lefeaux is a citizen of majority age and resident of West Baton Rouge Parish, State of Louisiana.

3.

Defendant the Town of Brusly is a political subdivision of the State of Louisiana, located in the Parish of West Baton Rouge.

1

## JURISDICTION AND VENUE

4.

This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343, as this action presents federal questions arising under the Constitution and laws of the United States. The federal claims brought by the Plaintiff include violations of 42 U.S.C. § 1983 and the First and Fourteenth Amendments to the United States Constitution.

5.

Plaintiff brings this action under 42 U.S.C. § 1983 to vindicate his rights guaranteed by the First and Fourteenth Amendments to the United States Constitution.

6.

Plaintiff also asserts related claims under Louisiana statutory law, including but not limited to La. R.S. 40:2531 and La. R.S. 40:2537. This Court has supplemental jurisdiction over those state-law claims pursuant to 28 U.S.C. § 1367(a), as they form part of the same case or controversy and arising from the same nucleus of operative facts as Plaintiff's federal constitutional claims.

7.

Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b), because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred within the Middle District of Louisiana, and the Town of Brusly is a municipality located within the Middle District of Louisiana. Additionally, the damages complained of were sustained within this district, and the named Defendants are domiciled in and conduct official business within this district.

## FACTS

8.

Chief Lefeaux is elected by the residents of the Town of Brusly to serve as Chief of Police for the Town of Brusly.

9.

Chief Lefeaux does not have authority to hire or fire any personnel, including law enforcement officers and Plaintiff herein, as that authority is vested solely with the Town of Brusly, through its Town Council.

10.

Sergeant Zachary is a lifelong law enforcement officer. From 2014-2015, he was employed by the East Baton Rouge Sheriff's Office as a deputy, working in the jail. From 2016-2018, he was hired as a deputy for Pointe Coupee Parish Sheriff's Office. Eventually, he was promoted to corporal in Pointe Coupee Parish Sheriff's Office. From 2018-2020, he worked for the Defendant Town of Brusly, as an officer under Defendant Chief Lefeaux. Wanting more experience than the small Town of Brusly could provide, from 2020-2023 Sergeant Zachary went to work for the West Baton Rouge Parish Sheriff's office as a deputy, even taking a small pay cut to attempt to gain more experience and grow his law enforcement career.

11.

In early 2023, Defendants offered then "Deputy" Zachary a pay raise for him to return to the Town of Brusly, specifically at the request of Defendant Chief Lefeaux, whereupon Plaintiff returned to work for the Town of Brusly as a "Corporal."[1]

12.

Corporal Zachary was hired to perform the routine duties of a law enforcement officer and was not hired to reform internal operations or as an internal "watchdog" for Defendants.

13.

Officer Zachary immediately made his mark in the Town of Brusly, with numerous high-profile arrests.

14.

On March 13, 2023, Plaintiff received a Certificate of Excellence from the Town of Brusly Police Department for apprehending a threatened active shooter at "Walk Ons" restaurant without any injuries or shootings.

15.

On or about November 6, 2023, Defendant Chief Lefeaux promoted Plaintiff to the rank of Sergeant.

---

[1] Law enforcement rankings are as follows:  Officer, Corporal, Sergeant, Lieutenant, Captain, Major and Chief.

16.

Again, at no time did Sergeant Zachary's duties include reforming internal operations or acting as an internal "watchdog" of wrongdoing.

17.

On October 7, 2024,  Sergeant Zachary received a Certificate of Achievement from the Town of Brusly for outstanding efforts in safeguarding the residents of the Town of Brusly during a Louisiana State Police pursuit, wherein he was able to stop the fleeing vehicle, causing it to crash into the levee without any bystander injuries.

18.

During this time, Sergeant Zachary also made many other significant arrests, including a juvenile rape case and a case involving changing the switch on a "glock" to make it into a machine gun.

19.

In addition to his patrol duties as Sergeant, Assistant Chief Thomas Southon, with the approval of Defendant Chief Lefeaux also placed Sergeant Zachary over the "Flock" system - the software which captures and reads license plates on traveling vehicles to determine whether they are wanted for warrants or if the vehicle was stolen.

20.

At all relevant times, Defendants were pleased with Sergeant Zachary's performance.

21.

Indeed, on April 1, 2025, Sergeant Zachary submitted his resignation to Chief Lefeaux after becoming concerned about certain actions by the police department which will be set forth below. In response, Chief Lefeaux begged Sergeant Zachary to stay and "tore up" his letter of resignation. Given Chief Lefeaux's request, Sergeant Zachary advised he would remain employed.

***The Illegal Ticket Quota System***

22.

Beginning sometime in 2025, Chief Lefeaux began implementing a custom and/or policy of requiring officers write a minimum of "five tickets" per shift.  Chief Lefeaux unabashedly and repeatedly "reminded" officers of their "ticket quota" during meetings, during informal conversations, with passing comments, and even during a public council meeting.

23.

However, Louisiana law expressly provides that:

> No municipality or any police department thereof….shall establish or maintain, formally or informally, a plan to evaluate, promote, compensate, or discipline a law enforcement officer on the basis of the officer's issuance of a predetermined or specified number of any type or combination of types of traffic citations **or require or suggest to a law enforcement officer, that the law enforcement officer is required or expected to issue a predetermined or specified number of any type or combination of types of traffic citations within a specified period.**

La. Rev. Stat. 40:2401.1 (bold added).

6

24.

On January 28, 2025, Asst. Chief Southon sent a group text message to all Brusly law enforcement officers stating that:

> Ladies and gentlemen.  It's a new year.  I've been looking at the reports and numbers and we need to make a huge improvement in traffic enforcement.  Remember that everyone is expected to make **<u>five safety stops</u>** a night and complete a citation or warning citation for the records.
>
> Thank you for all you do. ****
>
> Please keep in mind that raises will be performance based and this will include all aspects of your job (Patrol, traffic, calls, reports, investigations).

*See* 1/8/2025  Text message, Exhibit "1" (emphasis added)

25.

The term "safety stops" is a well-known term in law enforcement and/or the Town of Brusly used to avoid stating "tickets" - in a transparent attempt to avoid being in violation of the prohibition against ticket quotas.

26.

Knowing Chief Lefeaux's ticket quota system was illegal and immoral, Sergeant Zachary indicated that the policy was illegal and responded, "if I see a violation, I will issue a ticket" but "I won't be a road pirate." As Chief Lefeaux continued to press Sergeant Zachary and others to meet his illegal quota requirement, Sergeant Zachary continued to respond, "you know how I feel about that."

7

27.

In response to Sergeant Zachary's comments that he would not engage in Chief Lefeaux's illegal ticket quota system, Chief Lefeaux would roll his eyes and mumble, "if you want a job, you will write the tickets."

28.

Sergeant Zachary steadfastly refused to participate in the illegal ticket quota system.

29.

At the April 2025 council meeting, Chief Lefeaux recommended several new officers to be hired, whereupon the council discussed the budget and pay schedules for the Town's law enforcement personnel. In response, Town of Brusly Councilman Rusty Daigle suggested the Town should implement a quota system for incentives, with Chief Lefeaux responding how "aggravating" it is that the officers can "hide behind these laws" prohibiting a ticket quota system and that "it's a headache":

> **Councilman Daigle**: "…a**nd maybe some merit based associated with it.** Just so if you have one officer that's truly outperforming the others. If on an annual budget in June, if we give a cost of living and everybody gets the same rate. Why does this guy want to push harder? It it just. **I don't know where that incentive comes.**
>
> **And I don't even if that's an ethical issue**. If **it can be a some type of merit based or incentive based.** And if then we kinda really look at the officer and say ok this guy here did X. **Maybe its in penalties or tickets that he issued.**
>
> Other Councilman: **Nope.**
>
> Other Councilman: **can't have a quota..**
>
> Other Councilman: **can't have a quota.**
>
> Councilman Daigle: **I'm not saying you SET the quota.** But I …I …don't feel. Well. My opinion is. **I don't know why we can't LOOK at**

8

**it. I don't to tell you you HAVE to do this. But if I can see Tom is writing 500 a month and Blake is writing 10. And then when budget time comes up they…you'll are going to get equal raises? I don't think that's correct.**

**Chief Lefeaux:** That's what we are doing now.

Councilman Daigle: Well what's your opinion. I'm sorry…

Chief Lefeaux: **No I'm telling you. Its'…It's aggravating.** You know? You got some that's so poorly performing. And you really can't strike 'em down for not going out there and actively doing work. It's aggravating.

Councilman Daigle: There ya go.

Chief Lefeaux: **Its aggravating. So many laws they can hide behind. You can't force them to do this. You can't force them to do that.** It just makes a mess at the end of a day. And it's headache I can promise you. It's an absolute headache.

Councilman Daigle: If you had those tiers and had some incentive based….

Chief Lefeaux: **I'm still hitting my head on the wall about it. I've tried I've tried I've tried.**

*See* 4/14/25 Town of Brusly council meeting at 31:43 – 33:15, located at:

https://quinnlawoffices.sharefile.com/public/share/web-s3df57ede67b9499da1f9b4c5c5b2af5e

30.

Chief Lefeaux concluded that by the time of the new budgetary year, there would be an increase in pay across the board and they will "**cut where we need to.**"  *Id.* at 41:34-42.  In other words, directly after the councilman's request to give "merit based" raises based upon the "number of tickets" written, Chief Lefeaux stated that with the new budget, there would be an increases in pay and "cut where we need to" – i.e., terminate officers unwilling to participate in the quota system.

31.

On May 16, 2025, Chief Lefeaux reiterated his position via text message to Sergeant Zachary regarding the ticket quota system:

9

Zachary:  …did you know the sheriff's office cut all the deputies insurance?

****

Chief Lefeaux: Yep.  I had a talk with him.  He had to do it to maintain his budget. ******That's why we have to make sure and hit our $600,000 ticket budget.**

*See* 5/16/25 Text Message between Serg. Zachary and Chief Lefeaux, Exhibit "2".

### *Defendants Threats To Officers Not to Speak To Council*

32.

The foregoing April 14, 2025, Town of Brusly council meeting was convened at 6 p.m. at its Town Hall - located  directly next door to the Town of Brusly police department.  During this meeting, the Town of Brusly police department was to formally hire certain new officers.

33.

At 4:00 p.m. that same day, the Town of Brusly Police Department had a "shift change" (as it did each day at 4pm).   As such officers were getting off their shift and all of the officers coming on to their shift were at the police department.  While the officers were present because it was shift change, many decided to remain and congratulate the new hires and meet their new contemporaries at the council meeting to convene in approximately two (2) hours.

34.

Just before the Town of Brusly council meeting was to convene, Chief Lefeaux summoned Sergeant Zachary into his office to discuss the upcoming hiring of a new detective and inquire as to Sergeant  Zachary's feelings on the matter.  Sergeant Zachary responded that he respected Chief

Lefeaux's decision and agreed that the new hire was qualified but acknowledged concerns regarding morale among existing officers arising from outside hiring practices.

35.

Shortly thereafter, Chief Lefeaux entered the "squad room" and engaged in an outburst - shouting at various officers, including Sergeant Zachary, asking if anyone had a problem with the new hires. When Sergeant Zachary advised that he did not intend on speaking at the council meeting, Chief Lefeaux called him and another officer "liars."

36.

After Chief Lefeaux left the room, Assistant Chief Tom Southon entered the squad room and apologized for Chief Lefeaux's outburst. Thereafter, Asst. Chief Southon briefly met with Chief Lefeaux and returned to the squad room to disclose that Chief Lefeaux believed the officers were attending the council meeting to "raise hell" about the new hires – i.e., exercise their First Amendments Rights before the Town Council. Asst. Chief Southon relayed Chief Lefeaux's threat to the officers that **if any of them spoke at the City Council meeting that evening they would be fired.**

37.

Sergeant Zachary advised Asst. Chief Southon at that time that Chief Lefeaux's conduct and threats were improper and "was the definition of a hostile work environment" - to which Asst. Chief Southon nodded his head in agreement but shrugged his shoulders – making it known that he would not object to Chief Lefeaux's decision and instead would support and enforce such decision.

38.

The following day, on April 15, 2025, Sergeant Zachary issued a memorandum to City Council member Rusty Daigle, stating that:

I am submitting this memorandum to formally document a serious incident involving Chief Jonathan Lefeaux that occurred just prior to the most recent Town Council meeting. This incident raises significant concerns related to retaliation, workplace hostility, and the integrity of our departmental hiring practices.

Incident Overview

On the evening of the council meeting, Chief Lefeaux summoned me to his office and asked my opinion about the proposed hiring of Keegan Allen. I responded that Mr. Allen would be a good hire. Chief Lefeaux then asked: 'So, you won't go bitch and complain about him getting a certain position or higher pay than you?'

I replied:

'Sir, as I have told you in the past, it is not my place to speak on that. But since you are asking, it does hurt my morale that someone outside the agency gets hired to the rank of Lieutenant and straight to a detective spot that you know I have wanted and worked towards for a long time. So yes, it sucks-but I still think you should hire him because he is qualified.'

Chief Lefeaux then stormed out of his office and entered the squad room, shouting at multiple officers and declaring 'All y'all have a problem with me hiring outside people at better money, but you don't do what we ask now!'

He singled out Officer Jason Fontenot, accusing him of 'stirring the pot' by informing others about the proposed appointment and pay rate. In front of multiple witnesses, Chief Lefeaux called both myself and Officer Fontenot 'liars.'

Upon hearing this commotion, Assistant Chief Tom Southon exited his office visibly shocked. Chief Lefeaux left the squad room, and Assistant Chief Southon followed him.

Shortly afterward, Assistant Chief Southon returned and expressed to those of us present that he apologized for the Chief's behavior, stating 'this should not have happened.' He left again to speak with Chief Lefeaux, and upon returning a second time, Southon advised us that Chief Lefeaux believed we were planning to 'raise hell' at the council meeting about the hire, **and that if any of us spoke during the meeting, we would be fired.**

*See* 4/16/25 Memorandum from Serg. Zachary to Councilman Daigle, Exhibit "3"

(bold added).

39.

Chief Lefeaux's remarks set forth in the above that "you don't want to do what we ask now" was a reference to Sergeant Zachary's objection and refusal to participate in the illegal ticket quota system.

40.

This policy of enforcing an illegal ticket quota system was a custom and/or policy of Defendants and not of merely the predilection one (1) individual employee.

41.

Sergeant Zachary reiterated to the Town of Brusly, through his communications to Councilman Daigle:

> Councilman Daigle, the reason I am sending this to you is because I trust you more than any other member of Brusly's government, and I am genuinely at a loss as to what to do next. My intention is not to cause disruption but to ensure that the concerns of those who serve this town in uniform are taken seriously and handled with integrity. I believe in the mission of this department and the importance of protecting both the public and each other.

*Id.*

13

42.

In this memorandum to the Town of Brusly, Plaintiff requested:

1.  This matter be independently reviewed by the Council;
2.  **Officers be assured of their right to participate in public governance without fear of retaliation;**
3.  The hiring and appointment process for Mr. Allen be re-examined for procedural and policy compliance;
4.  The conduct of Chief Lefeaux should be assessed in light of its impact on morale, transparency, and compliance with department and legal standards.

*Id.*

43.

Nearly simultaneously, on  April 16, 2025, the Town of Brusly issued Sergeant Zachary a

"**Notice of Administrative Leave**" (paid), signed by Chief Lefeaux and Asst. Chief Southon,

advising him:

> [t]his letter serves as official notice that, effective immediately, you are being placed on paid administrative leave **pending the outcome of an investigation related to a complaint that has been received**.
>
> You are required to return your badge, unit, and all department-issued firearms to the Police Department without delay. These items must remain in the department's custody **until the investigation is concluded** and a determination has been made by the Chief of Police.
>
> Please be advised that a fit-for-duty evaluation may be required prior to your return to active duty.

*See* 4/16/25 Notice of Administrative Leave, attached as Exhibit "4".

14

44.

Quite notably, neither Defendants had *ever* previously disclosed, discussed, or complained of any "complaint" they had received regarding Sergeant Zachary.  In fact, Defendant Chief Lefeaux had begged Sergeant Zachary to remain on the force and refused to accept his resignation.

45.

In response, on April 16, 2025, Sergeant Zachary sent an email to Assistant Chief Southon requesting a written explanation underlying his administrative action and/or details regarding the alleged "complaint".  *See* 4/16/25 Email from J. Zachary to T. Southon, Exhibit  "5."

46.

A day or two later, Asst. Chief Southon telephoned Sergeant Zachary and advised that they had received a complaint from a resident who had requested a crash report and that Sergeant Zachary had allegedly responded by email that due to budgetary restraints she would have to wait until he comes back on shift.   No further details, information, or discussion was provided.

47.

At no time during this call did Asst. Chief Southon advise Sergeant Zachary of: a) the identity and authority of the person conducting such investigation, as required by La. Rev. Stat. 40:2531(B)(3); b) the identity of all persons present during such interrogation, as required by La. Rev. Stat. 40:2531(B)(4); c) allow Sergeant Zachary time to retain counsel, as required by La. Rev. Stat. 40:2531(B)(7); and/or d) record the telephone call, as required by La. Rev. Stat. 40:2531(B)(5).

48.

Further, during this same period of time, Sergeant Zachary, individually and through his then-attorney Chelsea Zachary (Sergeant Zachary's wife) requested his personnel file – and was told the Town of Brusly did not have a personnel file on Sergeant Zachary.

49.

Within one (1) week, without any further explanation or discussion, Defendants summoned Sergeant Zachary back to work, whereupon he resumed his duties.

50.

However, Defendants did not, and to date have not, disclosed whether there was any conclusion of the purported "investigation."

**FMLA AND/OR PATERNITY LEAVE REQUEST**

51.

Shortly thereafter, on May 1, 2025, Sergeant Zachary inquired whether the Town had paternity leave given that his wife was pregnant. In response, the Town of Brusly, through Asst. Chief Southon, responded that he did not believe the FMLA applied to the Town but that he would research the law to confirm.

**DEFENDANT'S REATLIATORY TERMINATION OF PLAINTIFF**

52.

Without any further discussion, warning or notice, on May 21, 2025, Sergeant Zachary was handed a "Disciplinary Action Report" by Asst. Chief Southon, signed by Chief Lefeaux and Asst Chief Southon, notifying him that he was terminated "effective immediately," but that "TERMINATION SUBJECT TO RETROACTIVE COUNCIL VOTE." *See* "Disciplinary Action Report," attached as Exhibit "6".

16

53.

On May 21, 2025, Sergeant Zachary, through his attorney Chelsea Zachary, issued a Freedom of Information Act ("FOIA") request to the Town of Brusly's attorney, clerk, councilmembers, Chief Lefeaux and Asst. Chief Southon, requesting: a) Sergeant Zachary's personnel file; b) the Town of Brusly's policies and procedures; c) all notes and documentation related to any investigation(s) of Sergeant Zachary; and d) other related information. *See* 5/21/25 FOIA request to Town of Brusly, attached as *in globo* Exhibit "7."

54.

On May 21, 2025, Asst. Chief Tom Southon responded to Attorney Chelsea Zachary that the FOIA request had been "forwarded to Town Attorney Tom Acosta for legal review. It will take longer than three business days to supply all the requested documentation." *See* 5/21/25 Email from T. Southon to C. Zachary, attached as *in globo* Exhibit "7."

55.

On June 6, 2025, the Town of Brusly responded through Asst. Chief Southon that: a) "A review of the policies shows that they were never adopted by the Brusly Town Council and therefore **there are no currently standing policies and procedures**"; b) regarding the request for Sergeant Zachary's personnel file, "Request to be made to Blaine Rabalais (Brusly Town Hall) for HR documentation." *See* 6/6/25 Email from T. Southon to C. Zachary, attached as Exhibit "8" (bold added).

56.

On June 9, 2025, the Town of Brusly's council meeting convened, for which Chief Lefeaux's recommendation of termination of Sergeant Zachary was on the agenda.

57.

Chief Lefeaux did not attend the meeting and instead Asst. Chief Southon attended the Town Council meeting to recommend the termination of Sergeant Zachary.

58.

During the Town Council meeting and ***knowing that no policies and procedures governed the Town of Brusly police department or Sergeant Zachary,*** Asst. Chief Southon recommended the termination of Sergeant Zachary for alleged violations of multiple departmental policies.

59.

Upon Chief Southon's oral recommendation at the town council meeting, the Town Council voted to terminate Sergeant Zachary effective June 9, 2025.

60.

At all relevant times, the Town of Brusly knew that Sergeant Zachary was recommended for termination after Sergeant Zachary exercised his First Amendment Rights after he issued the memorandum to Councilman Daigle.

61.

Defendants maintained a custom and/or policy of prohibiting employees' free speech and/or retaliation against those who exercise their First Amendment Rights to free speech, which is not merely the predilection of a single official and/or employee.

62.

Additionally and/or alternatively, the Town of Brusly's Town council ratified the policy of its police department of retaliation against employees who exercise their First Amendment Rights when they voted to terminate Sergeant Zachary after he issued a memorandum exercising his free speech to the council.

63.

Upon information and belief, Defendants have long operated the Brusly Police Department without properly adopted employment policies, disciplinary procedures, or lawful employment practices sufficient to ensure compliance with state and federal employment laws, thereby fostering an environment permitting arbitrary, retaliatory, and unlawful employment actions against officers.

64.

Defendants are keenly aware of the necessity of implementing lawful employment policies, supervisory practices, and compliance measures governing the Brusly Police Department, including compliance with federal employment laws and employee protections. *See e.g., Townsend v. Town of Brusly,* 421 F. Supp. 3rd 352 (M.D. LA 2019). Despite such awareness, Defendants nevertheless continued to operate without properly adopted employment policies or procedures and continued engaging in arbitrary, retaliatory, and unlawful employment practices. *See* e.g., Chief Lefeaux's comments during 4/14/25 Town Council meeting ("[i]ts aggravating. So many laws they can hide behind. **** It just makes a mess at the end of a day. And it's headache I can promise you. It's an absolute headache…. I'm still hitting my head on the wall about it. I've tried I've tried I've tried").

## COUNT I

## REQUEST FOR DECLARATORY RELIEF
## 28 U.S.C. § 2201

65.

La. Rev. Stat. 40:2531, commonly referred to as the "Police Officer's Bill of Rights" (the "POBR") expressly provides that *any* adverse action against Sergeant Zachary, including but not limited to, termination, in violation of its strict requirements are "**an absolute nullity**." La. Rev. Stat. 40:2531 (C) (bold added).

66.

Specifically, the POBR provides that "[w]henever a police employee or law enforcement officer is under investigation, the following minimum standards shall apply:"

- the officer being investigated **shall be informed, at the commencement of interrogation, the nature of the investigation and the identity and authority of the person conducting such investigation;**
- at the commencement of any interrogation, such officer shall be informed as to the i**dentity of all persons present during such interrogation; and the officer shall be allowed to make notes**;
- **All interrogations….in connection with the investigation shall be recorded in full which must be provided to the officer upon his written request**;
- **The officer shall have the right to be represented by counsel and any investigation *shall be suspended* for fourteen (14) days while (s)he secures such representation**;
- Complete the investigation within seventy-five (75) days, which is deemed completed upon a) **notice to the officer of a pre-disciplinary hearing; or b) determination of an unfounded complaint.**

La. Rev. Stat. 40:2531(B) (emphasis added).

67.

The POBR also provides that:

> **[t]here shall be no discipline, demotion, dismissal, or adverse action of any sort taken against a police employee or law enforcement officer unless the investigation is conducted in accordance with the minimum standards provided for in this Section**. Any discipline, demotion, dismissal, or adverse action of any sort whatsoever taken against a police employee or law enforcement officer without complete compliance with the foregoing minimum standards **is an absolute nullity**.

La. Rev. Stat. 40:2531 (C) (emphasis added).

68.

As set forth above, Defendants failed to a) at the commencement of the investigation, inform Sergeant Zachary of the (i) nature of the investigation; and (ii) the identity and authority of the person conducting the investigation; (b) at the commencement of the investigation, (i) inform Sergeant Zachary of the identity of all persons present during the "interrogation" and/or (ii) allow Sergeant Zachary to make notes; c) record all interrogations and/or provide such recordings to Sergeant Zachary despite his written request; d) suspend any investigation to allow Sergeant Zachary to obtain counsel; and/or e) provide any notice of completion of the investigation to Sergeant Zachary. La. Rev. Stat. 40:2531(B); *Miller v. City of Gonzales*, 202 So.3d 1114 (La. App. 1st Cir. 2016).

69.

Indeed, on information and belief, Defendants conducted *no* investigation whatsoever, and merely issued Sergeant Zachary a retaliatory termination notice, for clearly pre-textual alleged violations of alleged policies which they admit do not even exist.

21

70.

Plaintiff is entitled to a judgment declaring that Defendants violated the Police Officer Bill of Rights and that Sergeant Zachary's termination was null and void. *See* 28 U.S.C. § 2201; La. Rev. Stat. 40:531(C).

## COUNT II
## VIOLATION OF PLAINTIFF'S 14TH AMENDMENT RIGHTS
### Due Process

71.

Plaintiff may properly bring this claim pursuant to 42 USC § 1983 against Defendants. *Monell v. Dept of Social Services of the City of New York*, 436 U.S. 658 (1978).

72.

As set forth above, the POBR  expressly provides that *any* adverse action against Sergeant Zachary, including but not limited to, termination, in violation of its strict requirements are "an absolute nullity."  La. Rev. Stat. 40:2531 (C) (bold added).

73.

By operation of La. R.S. 40:2531(C), Plaintiff possessed a legitimate claim of entitlement to continued employment absent lawful compliance with the mandatory statutory prerequisites to discipline and dismissal. Defendants deprived Plaintiff of that protected property interest without constitutionally adequate notice, investigation, and opportunity to respond.

74.

As set forth above, Defendants failed to a) at the commencement of the investigation, inform Sergeant Zachary of the (i) nature of the investigation; and (ii) the identity and authority of the person

22

conducting the investigation; (b) at the commencement of the investigation, (i) inform Sergeant Zachary of the identity of all persons present during the "interrogation" and/or (ii)  allow Sergeant Zachary to make notes; c) record all interrogations and/or provide such recordings to Sergeant Zachary despite his written request; d) suspend any investigation to allow Sergeant Zachary to obtain counsel; and/or e) provide any notice of completion of the investigation to Sergeant Zachary.  La. Rev. Stat. 40:2531(B); *Miller v. City of Gonzales*, 202 So.3d 1114 (La. App. 1st Cir. 2016).

75.

Defendants failed to provide Sergeant Zachary any meaningful notice or opportunity to be heard as required by the POBR and, on information and belief,  conducted no meaningful investigation, had a predetermined outcome, and at all times maintained a retaliatory motive.

76.

Defendants' failure to comply with the POBR constitutes a deprivation of his property rights under the Fourteenth Amendment of the United States Constitution.

77.

Defendants' violation of Plaintiff's due process rights has caused Plaintiff damages, including but not limited to, financial loss, reputational damages, and emotional distress.

**COUNT III:**

**VIOLATION OF PLAINTIFF'S FIRST AMENDMENT RIGHTS TO FREE SPEECH**

78.

Sergeant Zachary may bring a violation of his First  Amendment Rights pursuant to 42 U.S.C. § 1983 because such restrictions on his speech were a widespread custom and/or policy enforced and/or ratified by Defendants.  *Monell*, 436 U.S. 658.

23

79.

At all relevant times, Defendant Chief Lefeaux desired to prevent Plaintiff from speaking to the Town of Brusly City Council and threatened to terminate him if he did so.

80.

Asst. Chief Southon knew of this unlawful custom and/or policy and enforced and/or ratified it when he told the officers, including Sergeant Zachary, that they would be terminated if they spoke at the council meeting.

81.

On April 16, 2025, Defendants placed Sergeant Zachary on administrative leave allegedly "pursuant to a complaint"- immediately after the April 15, 2025 Town council meeting wherein Chief Lefeaux became outraged believing that Sergeant Zachary may speak at the Town Council meeting and also the day after he threatened to terminate anyone who spoke to the Town Council meeting and at the same time that Sergeant Zachary disclosed his concerns about Chief Lefeaux's conduct to Councilman Daigle. *See* 4/16/25 Memorandum from Serg. Zachary to Councilman Daigle, attached as Exhibit "3"; 4/16/25 Notice of Administrative Leave, attached as Exhibit "4".

82.

Thereafter, on May 20, 2025, Chief Lefeaux issued Sergeant Zachary a Notice of Termination "**effective immediately** pending retroactive vote by City Council." *See* 5/20//25 Termination Notice (bold added).

24

83.

At all times, Plaintiff's speech was not made pursuant to his ordinary employment duties as a police sergeant. Instead, Plaintiff spoke as a citizen to elected municipal officials regarding matters of substantial public concern, including unlawful governmental conduct, retaliatory suppression of speech, and abuse of public authority.

84.

Knowing of Chief Lefeaux's threats to terminate Sergeant Zachary if he "spoke out" to the city council and knowing that Sergeant Zachary had indeed "spoken out" to the City Council through his April 16, 2025, memorandum, the Town of Brusly nevertheless terminated Sergeant Zachary, enforcing and/or ratifying the custom and/or policy of violating employees' First Amendment Rights.

85.

Defendants' actions in placing Sergeant Zachary on administrative leave and in terminating Sergeant Zachary for speaking out violated Sergeant Zachary's First Amendment Rights.

### COUNT IV

**Violation of La. R.S. 40:2537**
*Louisiana's Police Officer Whistleblower Statute*

86.

La. Rev. Stat. 40:2537 provides that:

> No police employee shall be discharged, demoted, suspended, threatened, harassed, or discriminated against in any manner in the terms and conditions of his employment because of any lawful act engaged in by the employee or on behalf of the employee in furtherance of any action taken to report malfeasance in office by police employees to law enforcement, whether such fellow employee is a co-worker, supervisor, or subordinate.

La. Rev. Stat. 40:2537(A).

87.

Further:

(1) A police employee may bring an action for relief against his employer, in a court of competent jurisdiction, for damages associated with any action taken by the employee which is in furtherance of reporting malfeasance in office.

(2) A person aggrieved of a violation of Subsection A of this Section **shall** be entitled to treble damages plus court costs and reasonable attorney fees.

La. Rev. Stat. 40:2537(B) (emphasis added).

88.

At all relevant times, Plaintiff Sergeant Zachary was a "police employee" within the meaning of La. Rev. Stat. 40:2537.

89.

In approximately the Spring of 2025, Defendant Chief Lefeaux engaged in unlawful and improper conduct under color of his office as Chief of Police by implementing and enforcing an unlawful ticket quota system, threatening officers with termination if they spoke before the Town Council regarding departmental concerns, attempting to suppress disclosure of misconduct and matters of public concern, and retaliating against officers who objected to or disclosed such conduct.

90.

Plaintiff engaged in lawful acts in furtherance of reporting malfeasance in office by reporting and disclosing Defendant Chief Lefeaux's conduct to Asst. Chief Southon and Councilmember Daigle.

26

91.

Plaintiff's memorandum and related disclosures constituted lawful acts undertaken in furtherance of reporting malfeasance in office by a police employee and supervisor.

92.

After Plaintiff engaged in protected conduct, Defendants retaliated against Plaintiff by threatening him with termination, placing him on administrative leave, subjecting him to investigation and harassment, terminating his employment, and otherwise discriminating against Plaintiff in the terms and conditions of his employment.

93.

Defendants' retaliatory actions were substantially motivated by Plaintiff's protected disclosures and reports of malfeasance in office.

94.

As a direct and proximate result of Defendants' conduct, Plaintiff suffered damages including loss of employment, loss of wages and benefits, loss of future earning capacity, emotional distress, humiliation, reputational harm, mental anguish, and other compensatory damages to be proven at trial.

95.

Pursuant to La. Rev. Stat. 40:2537(B), Plaintiff is entitled to recover treble damages, court costs, reasonable attorney fees, and all other relief provided by law.

## COUNT V:

## Louisiana Whistleblower Statute

### 96.

In addition to the Louisiana Police Officer's whistleblower statute, Louisiana law also

provides a general whistleblower statute:

> A. An employer shall not take reprisal against an employee who in good faith, and after advising the employer of the violation of law:
>
> (1) Discloses or threatens to disclose a workplace act or practice that is in violation of state law.
> (2) Provides information to or testifies before any public body conducting an investigation, hearing, or inquiry into any violation of law.
> (3) **Objects to or refuses to participate in an employment act or practice that is in violation of law**.

La. Rev. Stat. 23:967 (bold added).

### 97.

Thus, pursuant to the general Whistleblower Statute, an employee may seek relief if his

employer takes "reprisal" after the employee "objects to or refuses to participate in an employment

act or practice that is in violation of the law."

### 98.

Pursuant to this statute, Plaintiff is entitled to damages, attorneys fees and court costs. La.

Rev. Stat. 23:967(B).

28

99.

Notably, "damages" under this statute include backpay, benefits, and reinstatement.  La.  Rev.

Stat 23:967(D).

**JURY DEMAND**

100.

Plaintiff demands trial by jury on all issues so triable herein.

WHEREFORE, Plaintiff Jordan Zachary respectfully prays that after due proceedings are had,

there be judgment in his favor and against Defendants Jonathan Lefeaux, individually, and the Town

of Brusly:

a) declaring Plaintiff's termination an absolute nullity pursuant to La. R.S. 40:2531;

b) ordering Plaintiff's reinstatement;

c) awarding all damages, including but not limited to lost wages, lost benefits, emotional distress damages, reputational damages, and loss of future earning capacity;

d) awarding statutory damages, including treble damages where authorized by law;

e) awarding attorney fees and costs;

f) awarding legal interest;

g) awarding punitive damages as permitted under federal law; and

h) awarding all other legal and equitable relief to which Plaintiff may be entitled.

**RESPECTFULLY SUBMITTED,**

*/s/ Julie Quinn*

**JULIE QUINN (#21923) – T.A.**
**QUINNLAW, APLC**
**112 Founders Drive**
**Baton Rouge, LA 70810**
**julie@quinnlawoffices.com**
**225.372.6510**

*and*

**SHARON B. KYLE (# 25437)**
**KYLE LAW FIRM**
**4960 Bluebonnet Blvd., Ste. A**
**Baton Rouge, Louisiana 70809**
**Telephone: (225) 293-8400**
**Facsimile: (225) 291-9501**
**sk@kylelaw.net**
**service@kylelaw.net**

*Attorneys for Plaintiff Jordan Zachary*